**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

MAXINE E. GONZALES AND RALPH
GONZALES, Individually and as co-Personal
Representatives of the Estate of PAUL
GONZALES, deceased, and ASHLEY
GONZALES,

        Plaintiffs,

v.                                                                                              CIV. No. 07-1181 JP/DJS

EVER-READY OIL, INC., d/b/a/ CHEVRON
REDI-MART, U.S. AIRWAYS, INC., and
GIANT INDUSTRIES, INC.,

        Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFFS' MOTION TO REMAND**

        This case arises from an automobile accident that occurred on November 11, 2005 on Interstate 25 north of Santa Fe, New Mexico. Mr. Dana Papst was under the influence of alcohol and driving the wrong way on the interstate when he struck a car in which Paul Gonzales and four members of his family were riding, killing all of the occupants. Dana Papst died the following day. (Second Am. Compl. ¶ 16 (Doc. No. 1, Ex. 1)).

        Paul Gonzales' parents and sister filed suit in the Fourth Judicial District Court of New Mexico on January 17, 2007. The complaint named as defendants the estate of Dana Papst, his widow, Stephanie Papst, his employer, the Santa Fe Opera, and various entities Plaintiffs alleged had sold or served alcohol to Mr. Papst just before the accident. Plaintiffs filed a second amended complaint on October 18, 2007, adding U.S. Airways as a defendant.[1] The complaint

---

[1] U.S. Airways received service of the amended complaint on October 24, 2007. (Petition for Removal ¶ 20.)

1

alleges that U.S. Airways had violated various New Mexico state liquor laws and was liable under the New Mexico Dram Shop Act. On November 20, U.S. Airways removed the case to federal court on the ground that Plaintiffs' state law claims raised substantial, disputed issues of federal law creating federal subject matter jurisdiction under 28 U.S.C. § 1331. (Doc. No. 1.)

On December 20, 2007, Plaintiffs filed a Motion to Remand (Doc. No. 30), arguing that the removal was procedurally defective because U.S. Airways failed to obtain the written consent of the other defendants.[2] Plaintiffs also dispute that the claims against U.S. Airways raise any substantial, disputed questions of federal law.

Defendants bear the burden of establishing federal jurisdiction. *See Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995) (placing burden on defendant to show that the amount in controversy requirement was satisfied where defendant argued that the court had jurisdiction under 28 U.S.C. § 1332); *Green v. Ameritrade, Inc.*, 279 F.3d 590, 596 (8th Cir. 2002) (party opposing remand has the burden of establishing federal subject-matter jurisdiction).

The jurisdiction of this court turns on the nature of Plaintiffs' claims against U.S. Airways. As pleaded, these claims do not raise any issues of federal law.

Count VII alleges two theories of liability under the New Mexico Liquor Control Act. (Second Am. Compl. ¶¶ 74–81.) First, Plaintiffs allege that U.S. Airways served alcoholic beverages without obtaining a state license as required by NMSA § 60-6A-9 (1978).[3] (*Id.* ¶¶

---

[2]The Court concludes that remand is necessary due to the lack of subject matter jurisdiction. 28 U.S.C. § 1447(c). Therefore, the Court does not address Plaintiffs' argument that the removal was procedurally defective.

[3]"Public service license: A. Every person selling alcoholic beverages to travelers on trains or airplanes within the state shall secure a public service license from the department on or before July 1 of each year."

75–76.) Second, Plaintiffs allege that U.S. Airways violated NMSA § 60-7A-16[4] and § 40-11-1 (Dram Shop Act) by selling alcohol to Mr. Papst when he was visibly intoxicated and it was reasonably apparent to U.S. Airways personnel that he was intoxicated.

Count VIII alleges negligence per se in that U.S. Airways was a "person" subject to the New Mexico Liquor Control Act and breached its duty by serving alcohol to Mr. Papst in violation of § 60-7A-16 and without a license as required by § 60-6A-9. (*Id.* ¶¶ 82–88.) It is unclear how the negligence per se claim differs from Count VII.

Finally, Count IX alleges a state law claim for loss of consortium against all the defendants. (*Id.* ¶¶ 89–92.)

Defendants argue that although Plaintiffs' claims are based on state law, there is federal jurisdiction because federal regulation of alcoholic beverages service by airlines exclusively defines the standard of care to be applied to these state law claims. In *Grable & Sons Metal Products v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), the Supreme Court clarified when a claim based on state law involves such substantial federal issues that it can be deemed to be "arising under" federal law and therefore create federal jurisdiction under 28 U.S.C. § 1331. The Supreme Court framed the analysis as whether "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314. The Supreme Court's precedents in this area establish that federal jurisdiction requires (1) that the plaintiff's claim necessarily raises a substantial and disputed federal issue, (2) that there be some federal interest in having the claim heard in federal court, and (3) that federal jurisdiction is not inconsistent with congressional intent.

---

[4]"Sale to intoxicated persons: It is a violation of the Liquor Control Act [60-3A-1 NMSA 1978] for a person to sell or serve alcoholic beverages to or to procure or aid in the procurement of alcoholic beverages for an intoxicated person if the person selling, serving, procuring or aiding in procurement, knows or has reason to know that he is selling, serving, procuring or aiding in procurement of alcoholic beverages for a person that is intoxicated."

**1. Substantial and Disputed Federal Issue**

The Supreme Court has found federal jurisdiction based on the presence of a federal issue in only a narrow category of cases, typically where the federal question is purely legal, the state law claim is not fact-specific, and resolution of the disputed federal issue will be dispositive. In *Grable*, the actually disputed and substantial federal issue was whether the Internal Revenue Service (IRS) had provided the proper notice to Grable & Sons Metal Products, whose property was seized in satisfaction of a federal tax delinquency. *Id.* at 310. The IRS had provided Grable with notice of the tax sale via certified mail, but Grable asserted that 26 U.S.C. § 6335 required personal service of the notice of sale. *Id.* at 311. Grable brought a state law quiet title action against the subsequent purchaser of the property, who removed the case to federal court. *Id.* The Supreme Court held that there was federal jurisdiction, because "[w]hether Grable was given notice within the meaning of the federal statute is thus an essential element of its quiet title claim, and the meaning of the federal statute is actually in dispute; it appears to be the *only legal or factual issue contested* in the case." *Id.* at 315 (emphasis added). The Tenth Circuit echoed this reasoning in *Nicodemus v. Union Pacific Corp.*, 440 F.3d 1227, 1236 (10th Cir. 2006), holding that there was federal jurisdiction over a state-law-based claim where the construction of a federal land grant "appear[ed] to be the only legal or factual issue contested in the case."

In 2006, the Supreme Court emphasized that *Grable* exemplifies a slim category of cases. *Empire HealthChoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699 (2006). In *Empire Healthchoice*, a health insurance company sought reimbursement of medical benefits paid to a former federal employee, based on the insurance contract's subrogation agreement, after the employee's estate obtained compensation for the injuries from the responsible party. The insurance company argued that federal law was a necessary element of its claim against the estate because the contract had been negotiated by the Office of Personnel Management in accordance with requirements contained in the Federal Employees Health Benefits Act. *Id.* at 690. The Supreme Court concluded that the claim was "poles apart" from *Grable* because it was "fact-bound and situation-specific," rather than presenting a "nearly 'pure issue of law'" as *Grable* did. *Id.* at 700–01. Though the reimbursement claim involved interpretation of a contract term created under federal law, "it takes more than a federal element "to open the 'arising under' door." *Id.* at 701 (*quoting Grable*, 545 U.S. at 313)).

In *Empire Healthchoice*, the Supreme Court proceeded by explaining why the case before it did not resemble the exemplary situation presented in *Grable*. Likewise, it is necessary here to examine the nature of the federal law implicated by Plaintiffs' state law claims.

Two major federal statutes govern aviation. Congress enacted the Federal Aviation Act of 1958, Pub. L. No. 85-726, 72 Stat. 731 (codified as amended at 49 U.S.C. §§ 40101–49105) ("FAA"), in response to a series of fatal air crashes between civilian and military aircraft operating under separate flight rules. *See Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363, 368 (3rd Cir. 1999). Congress determined that a uniform set of flight rules was necessary and authorized the Federal Aviation Administration to promulgate regulations (the Federal Aviation Regulations or "FARs"). The FAA does not preempt state law tort actions, 49 U.S.C. § 40120(c), but it does preempt state law standards of care in certain kinds of cases. *Abdullah*, 181 F.3d at 368 (finding preemption of state law standards of care in any case involving aviation safety). *But see Skidmore v. Delta Air Lines, Inc.*, 2000 U.S. Dist. LEXIS 18587, 11–12 (N.D. Tex. Dec. 15, 2000) (concluding that state rather than federal standard of care should be applied in a personal injury negligence claim brought by passenger injured by trash collection cart).

The second statute is the Airline Deregulation Act of 1978, Pub. L. No. 95-504, 92 Stat. 1705 ("ADA"). This legislation loosened federal economic regulation of the airline industry and sought to prevent the states from undermining the deregulatory strategy by expressly prohibiting states from enacting or enforcing laws "related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1).

Defendants assert that these two federal laws, along with the FARs, "completely occup[y] the field of the standard of care to be exercised by a commercial airline while in flight." (Def.'s Response at 6.) The FARs contain specific requirements regarding the service of alcoholic beverages aboard commercial aircraft. For example, passengers may not consume alcohol onboard that has not been served by the airline. 14 C.F.R. § 121.575(a). No alcoholic beverages may be served during taxi, take-off, or landing. *Id.* § 121.577. Airlines may not permit a person who appears intoxicated to board the aircraft, *id.* § 121.575(c), and are prohibited from serving any alcoholic beverage to any person aboard an aircraft who appears to be intoxicated. *Id.* § 121.575(b)(1)). The airline must also report any disturbance caused by a person who appears to be intoxicated. *Id.* § 121.575(d).

5

Apparently, no court has yet addressed whether a state law dram shop act claim against an airline raises a substantial and disputed federal question that creates federal question jurisdiction. However, one court of appeals and two district courts have tackled the related question of whether state law tort claims involving aviation safety could invoke *Grable*-type federal question jurisdiction. All three courts held that there was no federal jurisdiction based on the elements of federal aviation law present in these state law claims.

In *Bennett v. Southwest Airlines Co.*, 484 F.3d 907 (7th Cir. 2007), the plaintiffs filed tort claims in Illinois state court following an accident during landing at Midway Airport in Chicago. Southwest Airlines and the other defendants removed the cases on the ground that federal aviation standards would play such a major role in the plaintiffs' claims that the claims must be deemed to arise under federal law. *Id.* at 908. The Seventh Circuit held that the federal regulations relevant to resolution of the tort claims were not so predominant that the plaintiffs' claims "arose under" federal law. The court concluded that the claims involved a "fact-specific application of rules that come from both federal and state law," in contrast with the "context-free inquiry into the meaning of federal law" that *Grable* entailed. *Id.* at 910. The court reasoned that many factors that vary from airport to airport would be important to resolution of the case, and that cases turning on unique sets of facts do not generate concerns about the uniform interpretation of federal law. *Id.* at 912.

Defendants attempt to distinguish *Bennett* on the ground that Plaintiffs' claim revolves around a particular federal issue—"whether U.S. Airways complied with the exclusive federal safety standards applicable to the service of alcoholic beverages in federal airspace."[5] (Response at 11.) However, the federal regulations at issue contain subjective standards, such as the prohibition on serving alcohol to a passenger who appears to be intoxicated. 14 C.F.R. § 121.575(b)(1). The court can only determine whether U.S. Airways complied with the regulations by examining the facts of the case and hearing the testimony of witnesses on these

---

[5]The Federal Aviation Administration initiated an investigation of the incident. (Letter from Richard Van Keuren to Lom Lulkovich, Dec. 28, 2006, Ex. 1 to Defs.' Response.) The agency recently terminated the investigation without stating its reasons for doing so, but Defendants contend that the agency concluded that U.S. Airways did not deviate from any applicable standard of care. (Defs.' Response at 12.)

factual questions. A comparison to *Grable* is instructive here. In that case, there was no dispute that Grable had received notice of the tax sale by certified mail. The question was the purely legal one of whether a specific federal statute required the IRS to serve notice personally. 545 U.S. at 310–11. Plaintiffs' case is much more like *Bennett* in that facts unique to Plaintiffs' claims will matter more than the meaning of federal law.

In *Glorvigen v. Cirrus Design Corp.*, Civ. No. 05-2137, 2006 U.S. Dist. LEXIS 8741 (D. Minn. Feb. 15, 2006), two plaintiffs brought separate wrongful death actions, later consolidated, alleging that the defendant corporation had provided inadequate training to the pilot of a private aircraft, leading to the death of the pilot and his passenger. Neither complaint cited to any federal law, but the defendant removed on the ground that the complaints raised significant federal issues. The district court noted that the Federal Aviation Regulations (FARs) would be at issue in the case, but concluded that they would not be dispositive as was the federal issue in *Grable*. *Id.* at *8. Nor were there any disputes about the meaning of the FARs, only their applicability. *Id.* Finally, the district court determined that the lack of a federal cause of action for violations of the FARs indicated that "Congress did not intend to create a substantial federal question over cases implicating the FAA and FARs." *Id.* at *8–9.

In *Sarantino v. American Airlines, Inc.*, Civ. No. 05-1702, 2005 U.S. Dist. LEXIS 43009 (E.D. Mo. Sept. 29, 2005), the plaintiff filed a negligence suit against several defendants based on a plane crash that killed one passenger. *Id.* at *5. Defendants removed the case on several grounds, including that the complaint raised substantial questions of federal law. *Id.* at *19–20. The court granted the plaintiff's motion to remand because the state tort claims "rested only in part on the allegation that Defendants may have violated federal aviation standards." *Id.* at *27. The court also noted that the fact that Congress preserved state remedies while not creating a federal cause of action was an important clue to Congress's conception of the scope of federal jurisdiction. *Id.* at *28.

In concluding that the plaintiffs' state law claims did not create federal jurisdiction, none of the courts in these three cases explicitly decided whether the relevant federal aviation law would completely displace state law standards of care. Yet all three cases involved issues of aviation safety, and there is general agreement that the FAA occupies the field of aviation safety and either provides the standard of care in state tort suits or preempts them altogether. *See*

*Montalvo v. Spirit Airlines*, 508 F.3d 464 (9th Cir. 2007) (holding that the FAA and FARs preempt a claim for failure to warn passengers regarding deep vein thrombosis); *Abdullah*, 181 F.3d at 371 (holding that state law standards of care, but not damage remedies, are preempted in tort claims arising from the operation of aircraft). *Bennett* and *Glorvigen* instead focus on what the plaintiffs would need to prove in their case in chief. There is a disputed question of federal law in this case—whether federal regulation of alcoholic beverages service by airlines preempts the standard of care written into the New Mexico Dram Shop Act. However, Plaintiffs' claims will not "turn on" this question. *Grable*, 545 U.S. at 312. In Grable's quiet title action, Grable could demonstrate that it had a superior claim to the property only by prevailing on its interpretation of the federal tax code. *Id.* at 314. If Defendants prevail on their argument that federal law defines the standard of care, then Plaintiffs' Dram Shop Act claim would turn on whether U.S. Airways complied with the federal regulations. At this point, once the federal issue is incorporated as part of Plaintiffs' case-in-chief, there is no longer any dispute about the meaning of federal law. The dispute is then about the application of the federal law to the facts of the case. *See Nicodemus*, 440 F.3d at 1235 (holding that the federal issue must arise in the plaintiffs' case in chief, not as part of the defense).

      Therefore, the Court declines to resolve the question of whether federal aviation law preempts state law standards of care in tort claims involving service of alcoholic beverages on board commercial aircraft. Even if federal law exclusively defines the standard of care to be applied in this suit, resolution of Plaintiffs' claims will turn on the application of that law to fact. The Court agrees with the reasoning of the Seventh Circuit in *Bennett* that in these circumstances, the federal issues are not substantial and disputed. The standard of care is only one element of this case. In determining whether Plaintiffs' Dram Shop Act claim has merit, the finder of fact must apply the standard of care, as informed by the federal regulations, to the facts of the case. The verdict with regard to U.S. Airways will depend on what the evidence shows about how visibly intoxicated Mr. Papst was at the time he boarded the flight and was served alcohol, among other facts. Moreover, other state law issues, such as damages, might dominate the proceedings. *See Bennett*, 484 F.3d at 910–11. Plaintiffs' claim does not involve a pure issue of federal law or even a dispute about the meaning of federal law. It is centrally about the application of a mixture of federal and state law to fact. In that way, it is closer to a case like

*Empire Healthchoice* than to *Grable*.

*Grable*-type jurisdiction "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." 545 U.S. at 312. Plaintiffs' claims will not *turn on* a question of federal law, but rather on the application of that law to fact. A federal court offers no greater experience, solicitude, or hope of uniformity in applying federal law to a set of unique facts than would a state court.[6]

## 2. Congressional Intent and Federal Interest in a Federal Forum

Another aspect of the *Grable* analysis is whether the contested federal issue is also "a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable*, 545 U.S. at 313. In *Grable*, the Supreme Court found that the federal government had a strong interest in the "prompt and certain collection of delinquent taxes and the ability of the IRS to satisfy its claims from the property of delinquents." *Id.* at 315 (citations omitted). In *Nicodemus*, the Tenth Circuit found a direct federal interest in the determination of property rights granted to the railroad through federal lands grants. 440 F.3d at 1236. In contrast, the Seventh Circuit in *Bennett* concluded that a state law tort action against an airline did not compel a federal forum because unlike *Grable*, the claim would not affect federal revenue collection or a "federal agency's performance of its duties under federal law." 484 F.3d at 910. Likewise, because the Plaintiffs' claims are against only private defendants and do not challenge the validity of any federal agency's action or rule the Court sees no strong federal interest in providing a forum for these kinds of claims. The federal government undoubtedly has an interest in uniform regulation of the airline industry, but this does not make it essential for all suits involving commercial airlines to proceed in federal court. Here, there is no dispute about

---

[6]Moreover, the Supreme Court retains the power to review state court decisions based on federal law if those courts develop inaccurate or inconsistent interpretations. The availability of direct review weakens the argument that original jurisdiction in the district courts is necessary for uniform application of federal law. *See Merrell Dow Pharms., Inc., v. Thompson*, 478 U.S. 804, 816 (1986).

the meaning of federal law, only its application to the facts of this case, so there is little risk of state courts creating a nonuniform application of federal law.[7]

The Supreme Court's 1986 decision in *Merrell Dow Pharmaceuticals, Inc., v. Thompson*, 478 U.S. 804 (1986), emphasized the importance of congressional intent regarding jurisdiction over suits to enforce federal laws. In that case, the plaintiffs alleged that a drug manufacturer was liable for birth defects based on common law theories of negligence, breach of warranty, strict liability, fraud, and gross negligence, and that the manufacturer had misbranded its product in violation of the Federal Food, Drug, and Cosmetic Act. *Id.* at 805–06. The Supreme Court found that the absence of a federal cause of action to enforce the federal labeling rules was "tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." *Id.* at 814. The Supreme Court has since clarified that the absence of a federal cause of action is not dispositive of whether federal question jurisdiction exists, but it is an important consideration in making the "sensitive judgments about congressional intent that § 1331 requires." *Grable*, 545 U.S. at 318 (characterizing the absence of a cause of action as equivalent to the absence of a welcome mat for the federal courthouse); *see also Nicodemus*, 440 F.3d at 1237 (holding that the presence of a federal cause of action is "evidence relevant to our calculus" but not dispositive).

Congress did not create a federal cause of action to enforce the federal regulations regarding service of alcoholic beverages by airlines, which "strongly indicat[es] that Congress did not intend to create a substantial federal question over cases implicating the FAA and FARs." *Glorvigen*, 2006 U.S. Dist. LEXIS 8741 at *8–9. In fact, the FAA explicitly maintains other remedies for violations of the FAA and its regulations. *See, e.g.*, 49 U.S.C. § 40120(c) (savings clause); *id.* § 41112(a) (requiring airlines to maintain liability insurance for bodily injury or death of individuals resulting from the operation or maintenance of an aircraft). The combination of these factors suggests that Congress did not consider federal jurisdiction critical to the uniform implementation of the FAA.

---

[7]The Supreme Court observed in *Merrell Dow* that an argument that state court use and interpretation of the federal standard "pose[s] a threat to the order and stability" of the federal statutory regime would be grounds for preempting state court jurisdiction, not for merely creating federal court jurisdiction. 478 U.S. at 816.

**3. Balance of Federal and State Judicial Responsibilities**

Finally, the Court must assess whether "federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Grable*, 545 U.S. at 313–14. In *Grable*, the Supreme Court determined that it was the rare state quiet title action that would require interpretation of the federal tax code, and therefore that allowing such claims into federal court would not disturb the congressionally approved balance of federal and state judicial responsibilities. *Id.* at 319. The Supreme Court contrasted the situation presented by *Grable* with that in *Merrell Dow*. Concerning the latter, the Supreme Court noted that "if the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action. And that would have meant a tremendous number of cases." 545 U.S. at 318.

Defendants argue that there is little reason to believe that a flood of cases would result from finding that a state tort case involving federal aviation regulations creates federal question jurisdiction. In *Bennett*, the Seventh Circuit came to the opposite conclusion—that if all suits about commercial air travel could be removed to federal court, this "would extend *Grable* and the arising-under jurisdiction well beyond the scope the Justices are willing to tolerate." 484 F.3d at 909. The *Bennett* court categorized the claim before it as similar to the tort claim in *Merrell Dow* in its potential to "move a whole category of suits to federal court." *Id.* at 911; *accord Sarantino*, 2005 U.S. Dist. LEXIS 43009 at *28. In defining the category of suits that would henceforth be removable, the Seventh Circuit took a broad view. Instead of considering only the precise kind of claim before it (i.e., tort suits arising from accidents during landing), the Seventh Circuit considered the impact of allowing removal of "*all* suits about commercial air travel." 484 F.3d at 909. Congress enacted highly detailed laws regulating aviation safety and service in order to provide a comprehensive federal scheme. To allow any state tort claim with an element of federal aviation law into federal court, particularly when Congress has not created a federal cause of action, appears to be inconsistent with congressional judgment about the scope of the federal courts' jurisdiction over state law tort claims involving aviation.

Plaintiffs' Motion to Remand (Doc. No. 30) is **GRANTED** and the case is remanded to the Fourth Judicial District Court of the State of New Mexico.

```
_____
SENIOR UNITED STATES DISTRICT JUDGE
```